WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Gregory Panaccione, et al., | No. CV-19-04483-PHX-DLR |
| Plaintiffs, | **ORDER** |
| v. | |
| Aldonex Incorporated, et al., | |
| Defendants. | |

At issue is Defendants Aldonex Incorporated ("Aldonex") and Steven Oliver's motion for summary judgment (Doc. 47), which will be granted.

**I. Background**

In 2006, non-party Metco Metal Finishing, LLC ("Metco") purchased an Ultimate Rectifier ("the Rectifier") from Aldonex. The Rectifier is a piece of industrial equipment that transports an electric current through a liquid solution to galvanize a metal. In 2018, the Rectifier began malfunctioning and Plaintiff Gregory Panaccione, who worked for Metco as a maintenance supervisor, attempted to repair it. After several unsuccessful attempts, Panaccione called Aldonex and spoke with Oliver, the general manager, about troubleshooting the Rectifier, which appeared to be blowing fuses. Oliver told Panaccione that the best way to determine whether the Rectifier had bad fuses was to measure the voltage on both sides of the fuse. Panaccione put Oliver on speakerphone while he read the measurements back, but his phone disconnected shortly after. During this time,

Panaccione was electrocuted. (Doc. 47 at 2-4; Doc. 53 at 2-4.)

Panaccione later brought this personal injury action against Alondex and Oliver. Panaccione alleges that Oliver acted negligently by not asking whether he was following Occupational Safety and Health Administration ("OSHA") guidelines (including wearing appropriate safety gear) and qualified to work on the Rectifier before advising him on how to troubleshoot it. Panaccione seeks to hold Aldonex vicariously liable for Oliver's negligence and independently liable for negligently hiring and training Oliver. (Doc. 1-3 at 2-6.)

**II. Legal Standard**

Summary judgement is appropriate when there is no genuine dispute of any material fact and, viewing those facts in a light most favorable to the nonmoving party, the movant is entitled to judgment as a matter law. Fed. R. Civ. P. 56(a). Summary judgment may also be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

**III. Analysis**

Defendants argue summary judgment is warranted because Oliver owed Panaccione no duty of care.[1] (Doc. 47 at 6.) "Whether a duty exists 'is a legal matter to be determined *before* the case-specific facts are considered.'" *Quiroz v. ALCOA Inc.*, 416 P.3d 824, 28 (Ariz. 2018) (quoting *Gipson v. Kasey*, 150 P.3d 228, 232 (Ariz. 2007)). In Arizona, duty "is based on either recognized common law special relationships or relationships created by public policy." *Id.* at 829. "Duties based on special relationships may arise from several sources, including special relationships recognized by the common law, contracts, or 'conduct undertaken by the defendant.'" *Id.* (quoting *Gipson*, 159 P.3d at 232). Foreseeability of harm, however, does not factor into duty determinations. *Id.* at 828.

Importantly, Panaccione's claims against Aldonex are derivative of Oliver's alleged

---

[1] Defendants alternatively argue that Panaccione cannot prove causation (Doc. 47 at 14), but the Court does not reach this argument because resolution of the duty question is dispositive.

- 2 -

negligence. *See Kopp v. Physician Grp. of Ariz., Inc.*, 421 P.3d 149, 151 (Ariz. 2018) ("Under the doctrine of respondeat superior, an employer is vicariously liable for the negligent work-related actions of its employees." (internal quotation and citation omitted)); *Mulhern v. City of Scottsdale*, 799 P.2d 15, 18 (Ariz. App. 1990) ("In order for the employer to be held liable for negligent hiring, retention or supervision, the employee must have committed a tort. . . . Thus, the employer is not negligent in hiring or retaining the employee as a matter of law if the theory of the employee's underlying negligence fails."). If Oliver committed no tort, then Panaccione's claims against Aldonex necessarily fail. As such, the relevant question is not, as Panaccione suggests (Doc. 53 at 9), whether a special relationship exists between Aldonex and Metco (the latter of which is not even a party to this case). Rather, the Court must determine whether Oliver and Panaccione share a special relationship giving rise to a duty of care.

Oliver and Panaccione have no contractual relationship. Further, Arizona courts are reluctant to recognize duties rooted in public policy in the absence of a statute imposing a duty, *Quiroz*, 416 P.3d at 830-31, and no such statute exists here. This leaves a common law special relationship or conduct undertaken by Oliver as the only possible sources of a duty of care.

Arizona courts recognize the common law special relationships identified in the Restatement (Second) of Torts ("Restatement"). *Id.* at 829; Restatement §§ 314, 316-19 (identifying categories of common law relationships, including common carriers, innkeepers, certain possessors of land, and custodians of persons). Oliver's relationship with Panaccione does not fall within any of these recognized categories, and Panaccione does not argue otherwise. Instead, relying on products liability cases, Panaccione argues that Oliver's duty derives from the relationship between a manufacturer of a product and an end-consumer. (Doc. 53 at 8-10.)

This argument is unpersuasive for three reasons. First, Panaccione has not alleged nor previously disclosed a products liability claim (Doc. 1-3 at 2-6; Doc. 59-1), and he cannot inject new theories into his case for the first time in response to a motion for

summary judgment. *See Cass, Inc. v. Prod. Pattern and Foundry Co., Inc.*, 3:13-cv-00701-LRH-WGC, 2017 WL 1128597, at *16 (D. Nev. Mar. 23, 2017) ("Courts consistently reject a plaintiff's attempt to raise new claims or theories of liability at the summary-judgment stage[.]"). Second, Panaccione confirmed at oral argument that he is not pursuing a products liability theory and explained that he merely is analogizing the relationship between Oliver and Panaccione to the relationship between a manufacturer and end-consumer. Third, Panaccione cites no case law that extends products liability principles outside the context of a products liability claim. Arizona's courts have not exported the manufacturer/end-consumer special relationship to other contexts by way of analogy, and the Court declines to do so here.

Thus, if Oliver owed Panaccione a duty of care, it must have derived from an undertaking. Under Restatement § 323:

> One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other's person or things, is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if
>
> (a) his failure to exercise such care increases the risk of such harm, or
>
> (b) the harm is suffered because of the other's reliance upon the undertaking.

Arizona has adopted the Restatement's definition of a voluntary protective undertaking. *See Tollenaar v. Chino Valley School Dist.*, 945 P.2d 1310, 1312 (Ariz. Ct. App. 1997) ("One who undertakes a service that falls within these sections must perform it with reasonable care.").

Defendants present a thorough argument for why Oliver did not engage in a voluntary protective undertaking. (Doc. 47 at 8-13.) Panaccione does not address these arguments in his response. He argues only that Oliver owed Panaccione a duty of care because Oliver is analogous to a manufacturer of a product and Panaccione is analogous to an end-consumer. (Doc. 53 at 8-10.) "Failure to respond to the merits of one party's

argument constitutes a concession of that argument." *M.S. v. Cty of Ventura*, No. CV 16-03084-BRO (RAOx), 2017 WL 10434015, at *24 n.20 (C.D. Cal. Mar. 7, 2017); *see also Mendoza v. City of Peoria*, No. CV-13-00258-PHX-DJH, 2015 WL 13239816, at *4 (D. Ariz. July 31, 2015) (construing Plaintiff's "silence" on an argument as a concession).

Nonetheless, Defendants' argument is well-taken on its merits. Panaccione was not in need of protection. He testified that he had worked on similar rectifiers for Metco in the past and that he was comfortable taking measurements from them.[2] (Doc. 47 at 3.) Panaccione also testified that he understood which parts of the Rectifier were electrically charged and which parts were safe to touch, what workplace protective gear he was required to wear while working on the Rectifier, and that the personal protective gear was designed to protect him from electric shock.[3] (*Id.*) Moreover, at the time Oliver undertook to provide troubleshooting advice, he did not have reason to believe his advice was necessary for Panaccione's protection. Panaccione introduced himself to Oliver as a maintenance electrician, told him that he had already been working on the Rectifier, and never indicated to Oliver that he was not wearing proper safety gear.[4] (*Id.* at 3, 5.)

The Court's conclusion is supported by the most factually analogous case cited in the briefs: *Lowery v. Echostar Satellite Corp.*, 160 P.3d 959 (Okla. 2007). In that case, a customer called her satellite company to complain of a dish malfunction. *Id.* at 962. The operator informed the customer that she needed to climb onto her roof to adjust her dish, and stayed on the line to guide the customer through the repair process. *Id.* While adjusting the dish, the customer fell from her roof and broke her leg. *Id.* The customer sued for negligence and the trial court granted summary judgment in favor of the satellite company. *Id.* at 962-93. The Oklahoma Supreme Court affirmed, concluding that Restatement § 323 was inapplicable because, although the satellite company had untaken to provide repair

---

[2] Panaccione claims to dispute that he was comfortable taking measurements from the Rectifier but he cites no controverting evidence. (Doc. 53 at 3.)

[3] Panaccione admits that this is his testimony, but he attempts to dispute these facts by claiming that his expert witness will contradict him. (Doc. 53 at 3.) Panaccione cannot manufacture a fact dispute by testifying to his understanding and then soliciting an expert to say Panaccione did not understand what he says he understood.

[4] Panaccione claims to dispute that he introduced himself to Oliver as a maintenance electrician, but he cites no controverting evidence. (Doc. 53 at 3.)

- 5 -

services, it had not undertaken to render safety or rescue services to the customer. *Id.* at 965-66.

Although the Rectifier is a more complex and dangerous machine than a satellite dish, the scope of Oliver's undertaking is no different. Oliver undertook to provide repair advice; he did not assume responsibility for Panaccione's safety or undertake to monitor and supervise Panaccione's compliance with OSHA regulations. For these reasons,

**IT IS ORDERED** that Defendants' motion for summary judgment (Doc. 47) is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendants' motion to strike Panaccione's notice of supplemental authorities (Doc. 72) is **DENIED**.

**IT IS FURTHER ORDERED** that the Clerk of the Court enter judgment accordingly and terminate this case.

Dated this 26th day of January, 2021.

Douglas L. Rayes
United States District Judge